# EXHIBIT 1

 CT Corporation

**Service of Process Transmittal**
01/10/2022
CT Log Number 540851406

TO: Elizabeth Anderson
Emerson Electric Co.
8000 W FLORISSANT AVE
SAINT LOUIS, MO 63136-1415

RE: **Process Served in Massachusetts**

FOR: Crosby Valve, Inc.  (Former Name)  (Domestic State: NV)
Crosby Valve, LLC (True Name)



**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: DENNIS HALE and LORA HALE // To: Crosby Valve, LLC |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # CGC21276981 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Boston, MA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/10/2022 at 10:51 |
| **JURISDICTION SERVED :** | Massachusetts |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **REMARKS:** | The documents received have been modified to reflect the name of the entity being served. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 01/10/2022, Expected Purge Date: 01/15/2022 |
| | Image SOP |
| | Email Notification,  Paige Thompson  paige.thompson@emerson.com |
| | Email Notification,  Elizabeth Anderson  elizabeth.anderson@emerson.com |
| | Email Notification,  Angela Alvarado  angela.alvarado@emerson.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>155 Federal Street<br>Suite 700<br>Boston, MA 02110<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other

 CT Corporation

**Service of Process Transmittal**
01/10/2022
CT Log Number 540851406

**TO:**     Elizabeth Anderson
            Emerson Electric Co.
            8000 W FLORISSANT AVE
            SAINT LOUIS, MO 63136-1415

**RE:**     **Process Served in Massachusetts**

**FOR:**    Crosby Valve, Inc.  (Former Name)  (Domestic State: NV)
            Crosby Valve, LLC (True Name)

advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                    Mon, Jan 10, 2022

**Server Name:**             Drop Service

| Entity Served | CROSBY VALVE INC. |
|---|---|
| Case Number | CGC21276981 |
| Jurisdiction | MA |



**RECEIVED**
*By vBR at 8:55 am, 1/11/22*

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

<div style="border: 1px solid black; text-align: center;">
FOR COURT USE ONLY<br>
*(SOLO PARA USO DE LA CORTE)*
</div>



**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
AIR & LIQUID SYSTEMS CORP., individually and as successor-in-interest to Buffalo Pumps, Inc.;
(See Additional Parties Attachment)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
DENNIS HALE and LORA HALE

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Francisco Superior Court<br>400 McAllister Street<br>San Francisco, CA 94102 | **CASE NUMBER:** *(Número del Caso):*<br><br>**CGC-21-276981** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Keller, Fishback & Jackson LLP, 28720 Canwood Street, Suite 200, Agoura Hills, CA 91301

| DATE:<br>*(Fecha)* 11/15/2021 | Clerk, by<br>*(Secretario)* **LAURA SIMMONS** | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**[SEAL]**

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

SUM-200(A)

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Dennis Hale and Lora Hale  v. Air & Liquid Systems Corp., et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

ALFA LAVAL INC., f/k/a The DeLaval Separator Company.

ARMSTRONG INTERNATIONAL, INC.,

BW/IP, INC.;

CBS CORPORATION, a Delaware Corporation, f/k/a Viacom Inc., Successor by Merger to CBS Corporation, a Pennsylvania Corporation, f/k/a Westinghouse Electric Corporation,

CLARK-RELIANCE CORPORATION, as successor-in-interest to Jerguson Guage and Valve,

CRANE CO , individually and as successor in interest to Stockham Valves & Fittings Company, Chapman Valve Mfg. Co. and Alloy Steel Products Co .;

→ CROSBY VALVE, INC.;

CUMMINS INC.,

ELLIOT COMPANY;

FLOWSERVE US, Inc., as successor-in-interest to Durametallic Corporation;

FLOWSERVE US, INC., as successor-in-interest to Edward Vogt Valve Co., Vogt Valve Company, Edward Valves, Inc., Nordstrom Audco, Inc., Nordstrom Valves, Inc., Rockwell Manufacturing Co.;

FMC CORPORATION, individually and as successor-in-interest to Peerless Pump, Turbo Pump Operation, and Chicago Pump;

FOSTER WHEELER LLC, f/k/a Foster Wheeler USA Corporation;

GARDNER DENVER, INC., individually and as successor-in-interest to Joy Manufacturing Co.;

GENERAL ELECTRIC COMPANY.

IMO INDUSTRIES INC ;

ITT LLC, f/k/a ITT, INC., f/k/a ITT CORPORATION, individually and as successor-in-interest to Bell & Gossett, Kennedy Valve Manufacturing Co., McDonnell & Miller, Fabri-Valve, Hoffman Specialty Manufacturing Co.;

JOHN CRANE, INC., individually and as successor-in-interest to CRANE PACKING COMPANY;

KAISER GYPSUM COMPANY, INC.;

MUELLER STEAM SPECIALTY;

NAVISTAR, INC ,

PACCAR, INC ,

PARKER HANNIFIN CORPORATION, individually and as successor-in interest to Sacomo-Sierra, Parker Seal Company; and Rockwell Mechanical Packing;

SERVICE ENGINEERING CO.;

STERLING FLUID SYSTEMS (USA) LLC, dba and individually and as successor-in- interest to PEERLESS PUMP COMPANY and INDIAN HEAD, INC.;

THE GOODYEAR TIRE & RUBBER COMPANY;

THE WILLIAM POWELL COMPANY;

TRIPLE A MACHINE SHOP, INC.;

VELAN VALVE CORP.;

VIKING PUMP, INC

VOLVO TRUCKS NORTH AMERICA  INC ;

Page   2   of   3

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

[ Print this form ]  [ Save this form ]    

SUM-200(A)

| SHORT TITLE :<br>Dennis Hale and Lora Hale v. Air & Liquid Systems Corp., et al. | CASE NUMBER· |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

[ ] Plaintiff  [ x ] Defendant  [ ] Cross-Complainant  [ ] Cross-Defendant

WARREN PUMPS LLC, individually and as successor-in-interest to WARREN PUMPS, INC.;
WEIR VALVES & CONTROLS USA, INC. f/k/a ATWOOD & MORRILL;
WELCO MANUFACTURING COMPANY;
DOES 1-500

Page  3  of  3
Pa of 1

**ADDITIONAL PARTIES AT TACHMENT**
Attachment to Summons

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

[ Print this form ]  [ Save this form ]       [ Clear this form ]

CASE NUMBER: CGC-21-276981  DENNIS HALE AND LORA HALE VS. AIR & LIQUID SYSTEM

## <u>NOTICE TO PLAINTIFF</u>

A Case Management Conference is set for:



**RECEIVED**
*By vBR at 8:55 am, 1/11/22*

       **DATE:**    **OCT 20, 2022**

       **TIME:**    **1:30 pm**

       **PLACE:**   **Department 503**
                   **400 McAllister Street**
                   **San Francisco, CA  94102-3680**

**All parties must appear and comply with California Rules of Court 3.110**

> **CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.**

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint.  Proof of service subsequently filed with this court shall so state.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

**RECEIVED**
By vBR at 8:55 am, 1/11/22

**KELLER, FISHBACK & JACKSON LLP**
Stephen M. Fishback (State Bar No. 191646)
Daniel L. Keller (State Bar No. 191738)
J. Bruce Jackson (State Bar No. 173215)
28720 Canwood Street, Suite 200
Agoura Hills, California 91301
Telephone:  818.342.7442
Facsimile:  818.342.7616

Attorneys for Plaintiffs

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/15/2021**
**Clerk of the Court**
BY: LAURA SIMMONS
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF SAN FRANCISCO

**CGC-21-276981**

DENNIS HALE and LORA HALE,

       Plaintiffs,

    vs.

AIR & LIQUID SYSTEMS CORP.,
    individually and as successor-in-interest to
    Buffalo Pumps, Inc.;
ALFA LAVAL INC., f/k/a The DeLaval
    Separator Company;
ARMSTRONG INTERNATIONAL, INC.;
BW/IP, INC.;
CBS CORPORATION, a Delaware Corporation,
    f/k/a Viacom Inc., Successor by Merger to
    CBS Corporation, a Pennsylvania
    Corporation, f/k/a Westinghouse Electric
    Corporation;
CLARK-RELIANCE CORPORATION, as
    successor-in-interest to Jerguson Guage and
    Valve;
CRANE CO., individually and as successor-in-
    interest to Stockham Valves & Fittings
    Company, Chapman Valve Mfg. Co. and
    Alloy Steel Products Co.;;
CROSBY VALVE, INC.;
CUMMINS INC.;
ELLIOT COMPANY;
FLOWSERVE US, Inc., as successor-in-interest
    to Durametallic Corporation;

Case No.

**COMPLAINT FOR PERSONAL INJURIES**

**Negligence**
**Strict Liability**
**False Representation Under Restatement**
    **Section 402-B**
**Intentional Tort**
**Premises Owner/Contractor Liability**
**Negligence-Clutch & Brake Components**
**Strict Liability-Clutch & Brake**
    **Components**
**Loss of Consortium**

---

1  FLOWSERVE US, INC., as successor-in-interest
     to Edward Vogt Valve Co., Vogt Valve
2    Company, Edward Valves, Inc., Nordstrom
     Audco, Inc., Nordstrom Valves, Inc.,
3    Rockwell Manufacturing Co.;
   FMC CORPORATION, individually and as
4    successor-in-interest to Peerless Pump, Turbo
5    Pump Operation, and Chicago Pump;
   FOSTER WHEELER LLC, f/k/a Foster Wheeler
6    USA Corporation;
   GARDNER DENVER, INC., individually and
7    as successor-in-interest to Joy
8    Manufacturing Co.;
   GENERAL ELECTRIC COMPANY;
9  IMO INDUSTRIES INC.;
   ITT LLC, f/k/a ITT, INC., f/k/a ITT
10   CORPORATION, individually and as
11   successor-in-interest to Bell & Gossett,
     Kennedy Valve Manufacturing Co.,
12   McDonnell & Miller, Fabri-Valve, Hoffman
13   Specialty Manufacturing Co.;
   JOHN CRANE, INC., individually and as
14   successor-in-interest to CRANE PACKING
     COMPANY;
15 KAISER GYPSUM COMPANY, INC.;
16 MUELLER STEAM SPECIALTY;
   NAVISTAR, INC.;
17 PACCAR, INC.;
   PARKER HANNIFIN CORPORATION,
18   individually and as successor-in interest to
19   Sacomo-Sierra, Parker Seal Company; and
     Rockwell Mechanical Packing;
20 SERVICE ENGINEERING CO.;
   STERLING FLUID SYSTEMS (USA) LLC,
21   dba and individually and as successor-in-
22   interest to PEERLESS PUMP COMPANY
     and INDIAN HEAD, INC.;
23 THE GOODYEAR TIRE & RUBBER
     COMPANY;
24 THE WILLIAM POWELL COMPANY;
25 TRIPLE A MACHINE SHOP, INC.;
   VELAN VALVE CORP.;
26 VIKING PUMP, INC.;
   VOLVO TRUCKS NORTH AMERICA, INC.;
27 WARREN PUMPS LLC, individually and as
28   successor-in-interest to WARREN PUMPS,

---

**COMPLAINT FOR PERSONAL INJURIES**                                    PAGE 2

INC.;
WEIR VALVES & CONTROLS USA, INC.
f/k/a ATWOOD & MORRILL;
WELCO MANUFACTURING COMPANY;
DOES 1-500;

Defendants.

PLAINTIFFS, DENNIS HALE AND LORA HALE, (hereinafter Plaintiff(s)), COMPLAIN AND ALLEGE AS FOLLOWS as against the above-named defendants:

1. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants DOES 1 through 500 are unknown to plaintiff at this time, who therefore sue said defendants by such fictitious names. When the true names and capacities of said defendants have been ascertained, plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages thereby to the plaintiffs, as hereinafter alleged.

2. At all times herein mentioned, each of the defendants was the agent, servant, employee and/or joint venturer of his co-defendants, and each of them, and at all said times, each defendant was acting in the full course and scope of said agency, service, employment and/or joint venture.

3. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, defendants on Exhibits "B", "C", and "D", and DOES 1 through 500, inclusive, were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants, or some of them, have regularly conducted business in the Counties of San Francisco, State of California. Original jurisdiction in this matter exists in the Superior Court of San Francisco,

---

**COMPLAINT FOR PERSONAL INJURIES**                                    PAGE 3

1 | California.

2 |     4.    Plaintiffs are informed and believe, and thereon allege that at all times herein

3 | mentioned, defendants on Exhibits "B", "C", and "D", and DOES 1 through 500, inclusive, were

4 | and are corporations whose activities relative to this action were directed specifically to citizens and

5 | residents of the State of California, including plaintiffs herein.  Defendants, and each of them,

6 | obtained substantial benefits from the State of California, including access to California's extensive

7 | customer base, coastal trade routes, and infrastructure including roads, rail, and ports for shipping.

8 | Plaintiffs further allege that plaintiffs' claims herein against defendants, and each of them, include

9 | those which arise specifically from their activities which were in and purposely directed to the State

10 | of California, and persons, corporations, partnerships, unincorporated associations, sole

11 | proprietorships and/or other business entities located in the State of California, including plaintiffs.

12 | Plaintiffs further allege that Defendants, their "alternate entities," and each of them, purposely

13 | availed themselves of relationships with California businesses and residents, which gave rise to

14 | some or all of plaintiffs' claims herein, and from which defendants derived substantial monetary

15 | and business benefits.

16 | <div align="center">**FIRST CAUSE OF ACTION**</div>

17 | <div align="center">(Negligence)</div>

18 | **PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," AND DOES 1-300,**

19 | **THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF**

20 | **ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:**

21 |     5.    At all times herein mentioned, each of the named defendants and DOES 1 through

22 | 300 was the successor, successor in business, successor in product line or a portion thereof, assign,

23 | predecessor, predecessor in business, predecessor in product line or a portion thereof, parent,

24 | subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity

25 | researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling,

26 | distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing,

27 | contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others,

28 | packaging and advertising a certain product, namely asbestos, and other products containing

**COMPLAINT FOR PERSONAL INJURIES**    PAGE 4

1    asbestos. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein

2    named defendants is liable for the tortious conduct of each successor, successor in business,

3    successor in product line or a portion thereof, assign, predecessor in product line or a portion

4    thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that

5    it was a member of, or funded, that researched, studied, manufactured, fabricated, designed,

6    modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected,

7    serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded,

8    manufactured for others and advertised a certain product, namely asbestos, and other products

9    containing asbestos. The defendants, and each of them, are liable for the acts of each and every

10    "alternate entity," and each of them, in that there has been a virtual destruction of plaintiffs' remedy

11    against each such "alternate entity"; defendants, and each of them, have acquired the assets, product

12    line, or a portion thereof, of each such "alternate entity"; such "alternate entity"; defendants, and

13    each of them, caused the destruction of plaintiffs' remedy against each such "alternate entity"; each

14    such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and

15    that each such defendant enjoys the goodwill originally attached to each such "alternate entity."

16         6.      At all times herein mentioned, defendants, their "alternate entities," and each of

17    them, were and/or are engaged in the business of researching, manufacturing, fabricating,

18    designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

19    supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing,

20    warranting, re-branding, manufacturing for others, packaging and advertising a certain product,

21    namely asbestos and other products containing asbestos. Said asbestos and other products

22    containing asbestos (hereinafter "asbestos and other products containing asbestos" and/or "asbestos-

23    containing products") specifically include, but are not limited to: adhesives/tape/mastic;

24    automobiles; boilers; brakes; cloth; compressors; condensors; construction materials including joint

25    compounds and drywall; desalination equipment; evaporators, economizers, fiber product; friction

26    materials; gaskets; hoists, insulating cement; insulation/insulating materials; lifts; motors; oil

27    purifying equipment; packing; pipecovering/block insulation; pumps; refrigeration equipment;

28    sealants/coatings; steam generating equipment, valves; and other materials containing asbestos

---

**COMPLAINT FOR PERSONAL INJURIES**                                                

1   currently unknown or unspecified by plaintiffs.

2       7.      At all times herein mentioned, defendants, their "alternate entities" and each of

3   them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated,

4   designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the

5   health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold,

6   inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded,

7   manufactured for others, packaged and advertised, a certain product, namely asbestos, and other

8   products containing asbestos, in that said products caused personal injuries to users, consumers,

9   workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called

10  "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby

11  rendering said products unsafe and dangerous for use by "exposed persons".

12      8.      Defendants, their "alternate entities," and each of them, had a duty to exercise due

13  care in the pursuance of the activities mentioned above and defendants, and each of them, breached

14  said duty of due care.

15      9.      Defendants, their "alternate entities" and each of them, knew, or should have known,

16  and intended that the aforementioned asbestos and products containing asbestos would be

17  transported by truck, rail, ship and other common carriers, that in the shipping process the products

18  would break, crumble or be otherwise damaged; and/or that such products would be used for

19  insulation, construction, plastering, fireproofing, soundproofing, automotive, and/or other

20  applications, including, but not limited to sawing, chipping, hammering, scraping, sanding,

21  breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos

22  fibers, and that through such foreseeable use and/or handling "exposed persons," including plaintiff

23  herein, would use or be in proximity to and exposed to said asbestos fibers.

24      10.     Plaintiff has used, handled or been otherwise exposed to asbestos and asbestos-

25  containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's

26  exposure to asbestos and asbestos-containing products occurred at various locations as set forth in

27  Exhibit "A," attached to plaintiffs' complaint and incorporated by reference herein.

28      10a.    Defendants, their "alternate entities," and each of them breached their duties by:  (a)

---

1  failing to warn plaintiff, DENNIS HALE, and others, including plaintiff's co-workers, employers,

2  and other tradesmen of the dangers, characteristics, and potentialities of their asbestos-containing

3  products when they knew or should have known that exposure to their asbestos-containing products

4  would cause disease and injury; (b) failing to warn plaintiff of the dangers to which he was exposed

5  when they knew or should have known of the dangers; (c) failing to exercise reasonable care to

6  warn plaintiff of what would be safe, sufficient, and proper protective clothing, equipment, and

7  appliances when working with or near or being exposed to their asbestos and asbestos-containing

8  products; (d) failing to provide safe, sufficient and proper protective clothing, equipment and

9  appliances with their asbestos and asbestos-containing products; (e) failing to test its asbestos and

10 asbestos-containing products in order to ascertain the extent of danger involved upon exposure

11 thereto; (f) failing to conduct such research as should have been conducted in the exercise of

12 reasonable care, in order to ascertain the dangers involved upon exposure to their asbestos and

13 asbestos-containing products; (g) failing to remove the product or products from the market when

14 the defendant corporations knew or should have known of the hazards of exposure to their asbestos

15 and asbestos-containing products; (h) failing upon discovery of the dangers, hazards, and

16 potentialities of exposure to asbestos to adequately warn and apprise plaintiff of said dangers,

17 hazards, and potentialities discovered; (i) failing upon discovery of the dangers, hazards, and

18 potentialities of exposure to asbestos to package said asbestos and asbestos-containing products so

19 as to eliminate said dangers, hazards, and potentialities; (j) failing to advise plaintiff and others that

20 the risks inherent in their asbestos-containing product greatly outweighed the benefits, if

21 any, afforded by such products; and  (k) generally using unreasonable, careless, and negligent

22 conduct in the manufacture, fabrication, supply, distribution, sale, installation, and/or use of their

23 asbestos and asbestos-containing products, among other actions/inactions.  Plaintiffs expressly

24 disclaim any cause of action or recovery for any injuries and damages resulting from exposure to

25 asbestos caused by the acts or omissions of defendants committed at the specific and proven

26 direction of an officer of the United States Government acting within in their official capacity or to

27 the extent that any of the plaintiff's asbestos exposure occurred on board vessels or aircraft of the

28 United States military or the construction and/or repair of such vessels or aircraft occurred on

1   proven federal enclaves.

2       11.   As a direct and proximate result of the conduct of the defendants, their "alternate

3   entities," and each of them, as aforesaid, plaintiff's exposure to asbestos and asbestos-containing

4   products caused severe and permanent injury to the plaintiff, the nature of which, along with the

5   date of plaintiff's diagnosis, are set forth in Exhibit "A," attached to plaintiffs' complaint and

6   incorporated by reference herein.

7       12.   Plaintiffs are informed and believe, and thereon allege, that progressive lung disease,

8   cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible

9   trauma and that said disease results from exposure to asbestos and asbestos-containing products

10   over a period of time.

11       13.   Plaintiff suffers from a condition related to exposure to asbestos and asbestos-

12   containing products.  Plaintiff was not aware at the time of exposure that asbestos or asbestos-

13   containing products presented any risk of injury and/or disease.

14       14.   As a direct and proximate result of the aforesaid conduct of defendants, their

15   "alternate entities," and each of them, plaintiff has suffered, and continues to suffer, permanent

16   injuries and/or future increased risk of injuries to his person, body and health, including, but not

17   limited to, lung cancer, and other lung damage and pleural disease, and the mental and emotional

18   distress attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in

19   the sum in excess of the jurisdictional limits of a limited civil case in the Superior Court.

20       15.   As a direct and proximate result of the aforesaid conduct of the defendants, their

21   "alternate entities," and each of them, plaintiff has incurred, is presently incurring, and will incur in

22   the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospice care, x-rays

23   and other medical treatment, the true and exact amount thereof being unknown to plaintiff at this

24   time, and plaintiff prays leave to amend this complaint accordingly when the true and exact cost

25   thereof is ascertained.

26       16.   As a further direct and proximate result of the said conduct of the defendants, their

27   "alternate entities," and each of them, plaintiff has incurred, and will incur, loss of income, wages,

28   profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full

---

**COMPLAINT FOR PERSONAL INJURIES**

1  nature and extent of which are not yet known to plaintiff; and leave is requested to amend this

2  complaint to conform to proof at the time of trial.

3        17.    Defendants, their "alternate entities," and each of them, and their officers, directors

4  and managing agents participated in, authorized, expressly and impliedly ratified, and had full

5  knowledge of, or should have known of, each of the acts set forth herein.

6        18.    Defendants, their "alternate entities," and each of them, are liable for the fraudulent,

7  oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's

8  officers, directors and managing agents participated in, authorized, expressly and impliedly ratified,

9  and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as

10  set forth herein.

11        19.    Defendants, their "alternate entities," and each of them acted with malice and

12  conscious disregard by manufacturing, marketing, selling, and distributing products that they knew

13  were dangerous, defective and deadly to consumers.  Defendants failed to take adequate measures

14  to protect people who worked with their product against a known hazard to their health over the

15  course of decades, including plaintiff.  Defendants, and each of them, also acted in total conscious

16  disregard for the safety of plaintiff because they were aware of the probable dangerous

17  consequences of their conduct and they willfully failed to avoid such consequences by continuing to

18  manufacture, market, sell, and distribute their asbestos-containing, deadly, and defective products

19  as safe, when they knew that it was not safe.

20        20.    The herein-described conduct of said defendants, their "alternate entities," and each

21  of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and

22  indifference to the safety and health of "exposed persons."  Plaintiffs, for the sake of example and

23  by way of punishing said defendants, seek punitive damages according to proof.

24        WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and

25  each of them, as hereinafter set forth.

26  ///

27  ///

28  ///

## SECOND CAUSE OF ACTION

### (Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF
ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS ON
EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM,
AND ALLEGE AS FOLLOWS:

21.     Plaintiffs incorporate herein by reference, as though fully set forth herein, the
allegations contained in Paragraphs 5-6 and 9-20 of the First Cause of Action herein.

22.     Defendants, their "alternate entities," and each of them, knew and intended that the
above-referenced asbestos and asbestos-containing products would be used by the purchaser or user
without inspection for defects therein or in any of their component parts and without knowledge of
the hazards involved in such use.

23.     Said asbestos and asbestos-containing products were defective and unsafe for their
intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The
defect existed in said products at the time they left the possession of defendants, their "alternate
entities," and each of them, and were placed into the stream of commerce. Said products did, in
fact, cause personal injuries, including asbestosis and asbestos pleural disease, other lung damage,
and cancer to "exposed persons," including plaintiff herein, while being used in a reasonably
foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

24.     "Exposed persons" did not know of the substantial danger of using said products.
Said dangers were not readily recognizable by "exposed persons". Said defendants, their "alternate
entities," and each of them, further failed to adequately warn of the risks to which plaintiff and
others similarly situated were exposed.

25.     In researching, manufacturing, fabricating, designing, modifying, testing or failing to
test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale,
supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,
marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos
and asbestos-containing products, defendants, their "alternate entities," and each of them, did so

---

1   with conscious disregard for the safety of "exposed persons" who came in contact with said

2   asbestos and asbestos-containing products, in that said defendants, their "alternate entities," and

3   each of them, had prior knowledge that there was a substantial risk of injury or death resulting from

4   exposure to asbestos or asbestos-containing products, including, but not limited to, mesothelioma,

5   lung cancer, and asbestosis and asbestos pleural disease.  Said knowledge was obtained, in part,

6   from scientific studies, government data, and medical data to which defendants had access, as well

7   as scientific studies performed by, at the request of, or with the assistance of, said defendants, their

8   "alternate entities," and each of them, and which knowledge was obtained by said defendants, their

9   "alternate entities," and each of them on or before 1930, and thereafter.

10         26.    On or before 1930, and thereafter, said defendants, their "alternate entities" and each

11   of them, were aware that members of the general public and other "exposed persons," who would

12   come in contact with their asbestos and asbestos-containing products, had no knowledge or

13   information indicating that asbestos or asbestos-containing products could cause injury, and said

14   defendants, their "alternate entities," and each of them, knew that members of the general public

15   and other "exposed persons," who came in contact with asbestos and asbestos-containing products,

16   would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products

17   was safe, when in fact said exposure was extremely hazardous to health and human life.

18         27.    With said knowledge, said defendants, their "alternate entities," and each of them,

19   opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy,

20   offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant,

21   re-brand, manufacture for others, package and advertise said asbestos and asbestos-containing

22   products without attempting to protect "exposed persons" from or warn "exposed persons" of, the

23   high risk of injury or death resulting from exposure to asbestos and asbestos-containing products.

24   Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high

25   risk of injury or death resulting from exposure to asbestos and asbestos-containing products,

26   defendants, their "alternate entities," and each of them, intentionally failed to reveal their

27   knowledge of said risk, and consciously and actively concealed and suppressed said knowledge

28   from "exposed persons" and members of the general public, thus impliedly representing to

1     "exposed persons" and members of the general public that asbestos and asbestos-containing

2     products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities," and

3     each of them, engaged in this conduct and made these implied representations with the knowledge

4     of the falsity of said implied representations.  Defendants, their "alternate entities," and each of

5     them, made these false representations within the State of California, and directed their false

6     advertisements to businesses and residents of California, including plaintiff herein.

7           28.    The above-referenced conduct of said defendants, their "alternate entities," and each

8     of them, was motivated by the financial interest of said defendants, their "alternate entities," and

9     each of them, in the continuing, uninterrupted research, design, modification, manufacture,

10     fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection,

11     installation, contracting for installation, repair, marketing, warranting, re-branding, manufacturing

12     for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of

13     said financial motivation, said defendants, their "alternate entities," and each of them, consciously

14     disregarded the safety of "exposed persons" and in fact were consciously willing and intended to

15     permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced

16     persons to work with and be exposed thereto, including plaintiff.

17           29.    Plaintiffs allege that the aforementioned defendants, their "alternate entities," and

18     each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for

19     their intended use but that their asbestos and asbestos-containing products, created an unreasonable

20     risk of bodily harm to exposed persons.

21           30.    Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos

22     and various asbestos-containing products manufactured, fabricated, inadequately researched,

23     designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered for

24     sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed,

25     warranted, re-branded, manufactured for others, packaged and advertised by the aforementioned

26     defendants, their "alternate entities," and each of them and that plaintiff cannot identify precisely

27     which asbestos or asbestos-containing products caused the injuries complained of herein.

28           31.    Plaintiff relied upon defendants', their "alternate entities'," and each of their

representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products. As a direct, foreseeable and proximate result thereof, plaintiff has been injured permanently as alleged herein.

32.    The above-referenced conduct of said defendants, their "alternate entities," and each of them, did in fact earn them revenue as they intended.  As the above referenced conduct of said defendants was and is vile, base, willful, malicious, fraudulent, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons", including plaintiff who has suffered the injuries and damages previously alleged, plaintiff, for the sake of example, and by way of punishing said defendants, seek damages according to proof.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (False Representation Under Restatement of Torts Section 402-B)

**AS AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:**

33.    Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First, Second, Sixth, and Seventh Causes of Action.

34.    At all times herein mentioned, each of the named defendants and DOES 1 through 300 was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, and other products containing

asbestos. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiffs' remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entity"; defendants, and each of them, caused the destruction of plaintiffs' remedy against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity."

35.     At all times herein mentioned, defendants, their "alternate entities," and each of them, were and/or are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos and other products containing asbestos as set forth in Paragraph 6, above.

36.     At all times herein mentioned, defendants, their "alternate entities" and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other

products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products unsafe and dangerous for use by "exposed persons".

37.    Defendants, their "alternate entities," and each of them, also engaged in a false and deceptive marketing campaign, by making public representations that their products were safe, when they in fact were not safe. These material misrepresentations included those designed specifically for deceiving residents of California, including plaintiff, his co-workers, and other purchasers and users of their products and services, into believing their products and services were safe, when they were not safe. The false advertising and marketing of the products included radio, television, print, and other media, as well as the product packaging itself, which expressly and/or impliedly indicated that those hazardous products were safe. These false advertisements included those which were targeted to local California residents, businesses, and other purchasers and users of defendants' products and services, and were placed in local print media, such as newspapers and business directories in plaintiff's California local community. Defendants, their "alternate entities," and each of them, were also integral contributors to the false advertising campaign through their contributions in the research, design, and placement of the misrepresentations on the products, at distributions centers, and in media.

38.    Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care. Defendants, and each of them, also had a duty to disclose the dangerous the dangerous nature of their products, as defendants alone had knowledge of the extreme hazards and dangers associated with their products, which were not accessible to consumers, plaintiff, his employers, and co-workers. This duty of care extended to all plaintiff, and all purchasers, consumers, and users of Defendants' products and services, including plaintiff's co-workers, employers, and suppliers of Defendants' products and services.

39.    Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be

1   transported by truck, rail, ship and other common carriers, that in the shipping process the products

2   would break, crumble or be otherwise damaged; and/or that such products would be used for

3   insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other

4   applications, including, but not limited to sawing, chipping, hammering, scraping, sanding,

5   breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos

6   fibers, and that through such foreseeable use and/or handling "exposed persons," including plaintiff

7   herein, would use or be in proximity to and exposed to said asbestos fibers.

8          40.     Plaintiff used, handled or been otherwise exposed to asbestos and asbestos-

9   containing products referred to herein in a manner that was reasonably foreseeable to Defendants in

10  reliance on, and as a result of, Defendants' misrepresentations and conduct. Plaintiff's exposure to

11  asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit "A,"

12  attached to plaintiffs' complaint and incorporated by reference herein.

13         41.     Plaintiff relied on the false and misleading marketing and other conduct that was

14  designed to mislead him by defendants, their "alternate entities," and each of them, resulting in

15  Plaintiff's exposure to asbestos. Plaintiff's employers, co-workers and other purchasers and users

16  of Defendant's products and services also relied on the false and misleading marketing and other

17  conduct that was designed to mislead them by defendants, their "alternate entities," and each of

18  them, then passed on those dangerous products to Plaintiff.

19         42.     As a direct and proximate result of the conduct of the defendants, their "alternate

20  entities," and each of them, as aforesaid, plaintiff's exposure to asbestos and asbestos-containing

21  products caused severe and permanent injury to the plaintiff, the nature of which, along with the

22  date of plaintiff's diagnosis, are set forth in Exhibit "A," attached to plaintiffs' complaint and

23  incorporated by reference herein.

24         43.     Plaintiff is informed and believes, and thereon alleges, that progressive lung disease,

25  cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible

26  trauma and that said disease results from exposure to asbestos and asbestos-containing products

27  over a period of time, including specifically the time plaintiff resided in the State of California.

28         44.     Plaintiff suffers from a condition related to exposure to asbestos and asbestos-

1      containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-

2      containing products presented any risk of injury and/or disease.

3            45.      As a direct and proximate result of the aforesaid misrepresentations and misleading

4      conduct of defendants, their "alternate entities," and each of them, plaintiff has suffered, and

5      continues to suffer, permanent injuries and/or future increased risk of injuries to his person, body

6      and health, including, but not limited to, lung cancer, and the mental and emotional distress

7      attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in the

8      sum in excess of the jurisdictional limits of a limited civil case in the Superior Court.

9            46.      As a direct and proximate result of the aforesaid misrepresentations and misleading

10      conduct of the defendants, their "alternate entities," and each of them, plaintiff has incurred, is

11      presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital

12      care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof

13      being unknown to plaintiff at this time, and plaintiffs pray leave to amend this complaint

14      accordingly when the true and exact cost thereof is ascertained.

15            47.      As a further direct and proximate result of the said conduct of the defendants, their

16      "alternate entities," and each of them, plaintiffs have incurred, and will incur, loss of income,

17      wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses,

18      the full nature and extent of which are not yet known to plaintiffs; and leave is requested to amend

19      this complaint to conform to proof at the time of trial.

20            48.      Defendants, their "alternate entities," and each of them, and their officers, directors

21      and managing agents participated in, authorized, expressly and impliedly ratified, and had full

22      knowledge of or should have knowledge of each of the acts set forth herein. The specific names,

23      job titles, positions, or other identifying offices of said individuals are necessarily in possession of

24      defendants and full information concerning the facts relevant to this controversy and defendants,

25      and each of them, have more knowledge or the identities of said persons than plaintiffs, herein.

26            49.      At the aforementioned time when defendants, their "alternate entities," and each of

27      them, researched, manufactured, fabricated, designed, modified, tested or failed to test,

28      inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for

1  sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed,

2  warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and

3  asbestos-containing products, as herein above set forth, the defendants, their "alternate entities,"

4  and each of them, expressly and impliedly represented to members of the general public, including

5  the purchasers and users of said product, and other "exposed persons," including the plaintiff herein

6  and potentially some or all of his employers, that asbestos and asbestos-containing products, were

7  of merchantable quality, free of defects, and safe for the use for which they were intended. Said

8  misrepresentations of such material facts impacting the safety, reliability, and quality of defendants'

9  asbestos-containing products specifically included the failure to disclose known or suspected

10  hazards of working with and around said asbestos-containing products to the plaintiff and others.

11  Defendants' misrepresentations went far beyond the bounds of mere promises because defendants

12  affirmatively stated through those means more fully described herein that defendants' asbestos

13  and/or asbestos-containing products were safe and safe to use for their intended uses, but they were

14  not safe.  Defendants knew or should have known at the time of their misrepresentations that such

15  representations were false; defendants knew or should have known at the time of their

16  misrepresentations that their asbestos and/or asbestos-containing products were not safe or safe for

17  their intended uses.  Despite knowing of the dangers to plaintiff of working with and around

18  defendants' asbestos and/or asbestos-containing, defendants failed to disclose such dangers and in

19  fact concealed the same from plaintiff.  Defendants' misrepresentations and concealment of the

20  dangers attendant to working with and around defendants' asbestos and/or asbestos-containing

21  products occurred during such periods as defendants researched, manufactured, fabricated,

22  designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the

23  health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold,

24  inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded,

25  manufactured for others, packaged and advertised asbestos and other products containing asbestos,

26  and more specifically as it relates to plaintiff, during those periods of employment when plaintiff

27  worked with defendants' asbestos and/or asbestos-containing products as detailed in Exhibit A. The

28  facts misrepresented regarding the safety, reliability, and quality of defendants' asbestos-containing

**COMPLAINT FOR PERSONAL INJURIES**                                    PAGE 18

1  products are necessarily in possession of defendants who have full information concerning the facts

2  relevant to this controversy and defendants, and each of them, have more knowledge or the facts of

3  said misrepresentations than plaintiffs, herein.

4       50.    The purchasers and users of said asbestos and asbestos-containing products, and

5  other "exposed persons," including the plaintiff, his employers, and/or some or all of the suppliers

6  of defendants' services and asbestos-containing products, relied upon said representations of

7  defendants, their "alternate entities," and each of them, *as defendants, their "alternate entities,"*

8  *and each of them so intended,* in the selection, purchase and use of asbestos and asbestos-containing

9  products.

10       51.    Said representations by defendants, their "alternate entities," and each of them, were

11  false and untrue, and defendants knew or should have known at the time they were untrue, in that

12  the asbestos and asbestos-containing products were not safe for their intended use, nor were they of

13  merchantable quality as represented by defendants, their "alternate entities," and each of them, in

14  that asbestos and asbestos-containing products have very dangerous properties and defects whereby

15  said products cause asbestosis and asbestos pleural disease, other lung damages and cancer, and

16  have other defects that cause injury and damage to the users of said products and other "exposed

17  persons," thereby threatening the health and life of said persons including plaintiff herein.

18       52.    Defendants, their "alternate entities," and each of them, based on the state of

19  scientific and medical literature, as well as their own studies and research conducted regarding the

20  health hazards associated with working with and/or around asbestos-containing product had no

21  reasonable basis for believing the untrue representations made to plaintiff, plaintiff's employers,

22  and other groups and organizations with which plaintiff was affiliated, such as unions, through

23  which plaintiff would reasonably be expected to learn of such misrepresentations.

24       53.    Plaintiff and others, lacking the sophistication and knowledgeable regarding the

25  health hazards of working with and around defendants', their alternate entities, and each of them,

26  asbestos-containing products and relied upon the said misrepresentations and were, in fact, deceived

27  into believing that said asbestos-containing products were safe and free of defects and would not

28  cause severe risk of injury and death. Had plaintiff known that defendants' asbestos and/or

asbestos-containing products were unsafe for their intended uses, plaintiff would not have used and/or worked around the same or taken other steps to properly safeguard his health or the health of others when working with or around defendants' and others' asbestos-containing products.

54.    The facts intentionally omitted or misstated regarding the safety, reliability, and quality of defendants' asbestos and/or asbestos-containing products were/are necessarily in possession of defendants who had/have full information concerning the facts relevant to this controversy and defendants, and each of them, had/have more knowledge of the facts of said misrepresentations, concealments and nondisclosures than plaintiffs, herein.

55.    As a direct and proximate result of said false representations by defendants, their "alternate entities," and each of them, the plaintiffs sustained the injuries and damages herein above set forth.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Intentional Tort)

**AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708 THROUGH 1710, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "B," DOES 1-300, THEIR "ALTERNATE ENTITIES," AND ALLEGE AS FOLLOWS:**

56.    Plaintiffs, by this reference, hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the Third Cause of Action herein, excepting therefrom allegations pertaining to negligence.

57.    At all times pertinent hereto, the defendants, their "alternate entities," and each of them, owed plaintiff a duty, as provided for in Section 1708, 1709 and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of the plaintiff. When a duty to act was imposed, as set forth herein, the defendants, their "alternate entities," and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section

1709 (Deceit) and Section 1710 (Fraud) and, more specifically, included suggestions of fact which
were not true and which defendants, their "alternate entities," and each of them, did not believe to
be true; assertions of fact which were not true and which defendants, their "alternate entities," and
each of them, had no reasonable ground for believing to be true, and the suppression of fact when a
duty existed to disclose it, all as are more fully set forth herein; the violation of any one such duty
gave rise to a cause of action for violation of the rights of the plaintiff as provided for in the
aforementioned Civil Code sections.

      58.    Since on or before 1930, the defendants, their "alternate entities," and each of them,
have known and have possessed the true facts of medical and scientific data and other knowledge
which clearly indicated that the asbestos and asbestos-containing products referred to in plaintiffs'
First Cause of Action were and are hazardous to the health and safety of plaintiff, and others in
plaintiff's position working in close proximity with such materials. The defendants, their "alternate
entities," and each of them, have known of the dangerous propensities of other of the
aforementioned materials and products since before that time. Defendants' misrepresentations went
far beyond the bounds of mere promises because defendants affirmatively stated through those
means more fully described herein that defendants' asbestos and/or asbestos-containing products
were safe and safe to use for their intended uses, but they were not safe. Defendants knew at the
time of their misrepresentations that such representations were false; defendants knew at the time of
their misrepresentations that their asbestos and/or asbestos-containing products were not safe or
safe for their intended uses. Despite knowing of the dangers to plaintiff of working with and
around defendants' asbestos and/or asbestos-containing, defendants failed to disclose such dangers
and in fact concealed the same from plaintiff. Defendants' misrepresentations and concealment of
the dangers attendant to working with and around defendants' asbestos and/or asbestos-containing
products occurred during such periods as defendants researched, manufactured, fabricated,
designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the
health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold,
inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded,
manufactured for others, packaged and advertised asbestos and other products containing asbestos,

1   and more specifically as it relates to plaintiff, during those periods of employment when plaintiff

2   worked with defendants' asbestos and/or asbestos-containing products as detailed in exhibit A.  The

3   mere fact that defendant made its asbestos-containing products available for purchase, use, sale, or

4   otherwise to plaintiff and others was an intentional and affirmative fraudulent act.  With intent to

5   deceive, falsely represent facts regarding the true hazards of working with and around asbestos-

6   containing products, conceal the health risks associated with working in an asbestos-contaminated

7   environment, and purposefully failing to disclosure such material facts to plaintiff, and others in

8   plaintiff's position, and with the intent that plaintiff and such others should be and remain ignorant

9   of such facts with intent to induce plaintiff and such others to alter his and their positions to his

10  detriment, injury and/or risk and in order to gain economic advantages within the market, the

11  following acts occurred:

12          a.      Defendants, their "alternate entities," and each of them, did not label any of

13  the aforementioned asbestos-containing materials and products regarding the hazards of such

14  materials and products to the health and safety of plaintiff and others in plaintiff's position working

15  in close proximity with such materials until 1964 when certain of such materials were labeled by

16  some, but not all, of defendants, their "alternate entities," and each of them, herein when the

17  knowledge of such hazards was existing and known to defendants, their "alternate entities," and

18  each of them, since on or before 1930. By not labeling such materials as to their said hazards,

19  defendants, their "alternate entities," and each of them, caused to be suggested as a fact to plaintiff

20  that it was safe for plaintiff to work in close proximity to such materials when in fact it was not true

21  and defendants, their "alternate entities," and each of them, did not believe it to be true;

22          b.      Defendants, their "alternate entities," and each of them, suppressed

23  information relating to the danger of use of the aforementioned materials by requesting the

24  suppression of information to the plaintiff and the general public concerning the dangerous nature

25  of the aforementioned materials to workers, by not allowing such information to be disseminated in

26  a manner which would have given general notice to the public and knowledge of the hazardous

27  nature thereof when defendant, their "alternate entities," and each of them, were bound to disclose

28  such information;

1            c.     Defendants, their "alternate entities," and each of them, sold the

2    aforementioned products and materials to plaintiff's employers and others without advising plaintiff

3    and others of the dangers of use of such materials to persons working in close proximity thereto

4    when defendants, their "alternate entities," and each of them, knew of such dangers, and had a duty

5    to disclose such dangers all as set forth herein. By said conduct, defendants, their "alternate

6    entities," and each of them, caused to be positively asserted to plaintiff that which was not true and

7    that which defendants, their "alternate entities," and each of them, had no reasonable ground for

8    believing to be true, to wit, that it was safe for plaintiff to work in close proximity to such materials;

9            d.     Defendants, their "alternate entities," and each of them, suppressed from

10   plaintiff medical and scientific data and knowledge of the results of studies including, but not

11   limited to, the information and knowledge of the contents of the Lanza report. Although bound to

12   disclose it, defendants, their "alternate entities," and each of them influenced A. J. Lanza to change

13   his report, the altered version of which was published in Public Health Reports, Volume 50 at page

14   1 in 1935, thereby causing plaintiff and others to be and remain ignorant thereof. Defendants, their

15   "alternate entities," and each of them, caused Asbestos Magazine, a widely disseminated trade

16   journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users

17   thereof;

18           e.     Defendants, their "alternate entities," and each of them, belonged to,

19   participated in, and financially supported the Asbestos Textile Institute and other industry

20   organizations which, for and on behalf of defendants, their "alternate entities," and each of them,

21   actively promoted the suppression of information of danger to users of the aforementioned products

22   and materials, thereby misleading plaintiff by the suggestions and deceptions set forth above in this

23   cause of action. The Dust Control Committee, which changed its name to the Air Hygiene

24   Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust

25   control. Discussions in this committee were held many times regarding the dangers inherent in

26   asbestos and the dangers which arise from the lack of control of dust, and such information was

27   suppressed from public dissemination from 1946 to a date unknown to plaintiff at this time;

28           f.     Commencing in 1930 with the study of mine and mill workers at Asbestos

1   and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in

2   Manheim and Charleston, South Carolina, defendants, their "alternate entities," and each of them,

3   knew and possessed medical and scientific information of the connection between inhalation of

4   asbestos fibers and asbestosis and asbestos pleural disease, which information was disseminated

5   through the Asbestos Textile Institute and other industry organizations to all other defendants, their

6   "alternate entities," and each of them, herein. Between 1942 and 1950, the defendants, their

7   "alternate entities," and each of them, acquired medical and scientific information of the connection

8   between inhalation of asbestos fibers and cancer, which information was disseminated through the

9   Asbestos Textile Institute and other industry organizations to defendant herein. Thereby,

10  defendants, their "alternate entities," and each of them, suggested to the public as a fact that which

11  is not true and disseminated other facts likely to mislead plaintiff. Such facts did mislead plaintiff

12  and others by withholding the afore-described medical and scientific data and other knowledge and

13  by not giving plaintiff the true facts concerning such knowledge of danger, which defendants, their

14  "alternate entities," and each of them, were bound to disclose;

15          g.   Defendants, their "alternate entities," and each of them, failed to warn

16  plaintiff and others of the nature of said materials which were dangerous when breathed and which

17  could cause pathological effects without noticeable trauma, despite the fact that defendants, their

18  "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that

19  said materials were dangerous and a threat to the health of persons coming into contact therewith;

20          h.   Defendants, their "alternate entities," and each of them, failed to provide

21  plaintiff with information concerning adequate protective masks and other equipment devised to be

22  used when applying and installing the products of the defendants, and each of them, despite

23  knowing that such protective measures were necessary, and that they were under a duty to disclose

24  that such materials were dangerous and would result in injury to the plaintiff and others applying

25  and installing such material;

26          i.   Defendants, their "alternate entities," and each of them, when under a duty to

27  so disclose, concealed from plaintiff the true nature of the industrial exposure of plaintiff and knew

28  that plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop

1  irreversible conditions of pneumoconiosis, asbestosis and asbestos pleural disease and/or cancer.

2  Defendants, their "alternate entities," and each of them, also concealed from plaintiff and others that

3  harmful materials to which they were exposed would cause pathological effects without noticeable

4  trauma;

5      j.    Defendants, their "alternate entities," and each of them, failed to provide

6  information of the true nature of the hazards of asbestos materials and that exposure to these

7  materials would cause pathological effects without noticeable trauma to the public, including

8  buyers, users, and physicians employed by plaintiff and potentially plaintiff's employers so that

9  said physicians could examine, diagnose and treat plaintiff and others who were exposed to

10  asbestos, despite the fact that defendants, their "alternate entities," and each of them, were under a

11  duty to so inform and said failure was misleading; and

12      k.    Defendants, their "alternate entities," and each of them, failed to provide

13  adequate information to physicians and surgeons retained by plaintiff's employers and their

14  predecessor companies, for purposes of making physical examinations of plaintiff and other

15  employees as to the true nature of the risk of such materials and exposure thereto when they in fact

16  possessed such information and had a duty to disclose it.

17      55.    Defendants, their "alternate entities," and each of them, based on the state of

18  scientific and medical literature, as well as their own studies and research conducted regarding the

19  health hazards associated with working with and/or around asbestos-containing product, knew that

20  the representations made to plaintiff, plaintiff's employers, and other groups and organizations with

21  which plaintiff was affiliated, such as unions, through which plaintiff would reasonably be expected

22  to learn of such representations were false.

23      56.    Defendants, their "alternate entities," and each of them, willfully failed and omitted

24  to complete and file First Report of Occupational Injury of Illness regarding plaintiff's injuries, as

25  required by law, and did willfully fail and omit to file report of injury and occupational disease with

26  the State of California. Defendants similarly intentionally failed to state and disclose on their

27  asbestos-containing products and/or packaging the asbestos-related health risk, including risk of

28  asbestosis and asbestos pleural disease and cancer, which resulted from plaintiff and others working

1  with and around defendants' asbestos-containing products.

2      57.   Plaintiff was in the class of persons with respect to whom a duty was owed to file

3  such reports and who would have been protected thereby if the fact of danger from products

4  complained of had become known and plaintiff was in the class of persons to whom a duty was

5  owed as a consumer and user of defendants' asbestos-containing products to be informed truthfully

6  about the risks of using such asbestos-containing products. Plaintiff and others, neither

7  sophisticated nor knowledgeable regarding asbestos health hazards and the intentions to deceive by

8  defendants, justifiably relied on defendants' claims and representations regarding their asbestos-

9  containing products. Had plaintiff known that defendants' asbestos and/or asbestos-containing

10  products were unsafe for their intended uses, plaintiff would not have used and/or worked around

11  the same.

12      58.   Defendants, their "alternate entities," and each of them, having such aforementioned

13  knowledge, and the duty to inform plaintiff about the true facts, and knowing the plaintiff did not

14  possess such knowledge and would work with and around and ultimately breathe such material

15  innocently, acted falsely and fraudulently and with full intent to cause plaintiff to remain unaware

16  of the true facts and to induce plaintiff to work in a dangerous environment by failing to disclose

17  known information regarding asbestos health hazards, all in violation of Sections 1708, 1709, 1710,

18  and 1711 of the Civil Code of the State of California in an expectation of further sales and proceeds

19  from the supply of defendants' asbestos-containing products.

20  **FIFTH CAUSE OF ACTION**

21  **(Premises Owner/Contractor Liability)**

22  **AS AND FOR A FURTHER AND FIFTH SEPARATE AND DISTINCT CAUSE OF**

23  **ACTION, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C," DOES 301-**

24  **450, THEIR "ALTERNATE ENTITIES," (HEREINAFTER "PREMISES**

25  **OWNER/CONTRACTOR LIABILITY DEFENDANTS"), AND EACH OF THEM, AND**

26  **ALLEGE AS FOLLOWS:**

27      59.   Plaintiffs, by this reference, incorporate the allegations contained in paragraphs 10-

28  17 of the First Cause of Action.

60. At all times herein mentioned, each of the Premises Owner/Contractor Liability Defendants listed on Exhibit "C" was a successor, successor-in-business, assign, predecessor, predecessor-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on the respective premises owned, leased, maintained, managed and/or controlled by them. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein-named defendants is liable for the tortious conduct of each successor, successor-in business, assign, predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, that caused the presence as aforesaid of said asbestos-containing insulation and other toxic substances. The defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of plaintiffs' remedy against each such alternate entity; defendants, and each of them, have acquired the assets, or a portion thereof, of each such alternate entity; defendants, and each of them, have caused the destruction of plaintiffs' remedy against each such alternate entity; each such defendant has the ability to assume the risk-spreading role of each such alternate entity, and that each such defendant enjoys the goodwill originally attached to each such alternate entity.

61. At all times mentioned herein, the above-listed Premises Owner/Contractor Liability Defendants, and each of them, respectively, owned, leased, maintained, managed, and/or controlled the premises listed on Exhibit "A" and others where plaintiff was present. The information provided on Exhibit "A" is preliminary, based on recall over events covering many years and further investigation and discovery may produce more reliable information. Additionally, plaintiff might have been present at those or other Premises Owner/Contractor Liability Defendants' premises at other locations and on other occasions.

62. Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing materials, other building materials, products and toxic substances to be constructed, installed, disturbed, maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid respective premises, by

1   their own workers and/or by various contractors and/or subcontractors, and caused the release of

2   dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and

3   thereby created a hazardous and unsafe condition to plaintiff and other persons exposed to said

4   asbestos fibers and toxic substances while present at said premises.

5       63.     At all times mentioned herein, said Premises Owner/Contractor Liability

6   Defendants, and each of them, knew or in the exercise of ordinary and reasonable care should have

7   known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe

8   condition and unreasonable risk of harm and personal injury to plaintiff and other workers or

9   persons so exposed present on each of the aforesaid respective premises.

10      64.     At all times relevant herein, plaintiff entered said premises and used or occupied

11  each of said respective premises as intended and for each of the respective Premises

12  Owner/Contractor Liability Defendants' benefit and advantage and at each of the respective

13  Premises Owner/Contractor Liability Defendants' request and invitation. In so doing, plaintiff was

14  exposed to dangerous quantities of asbestos fibers and other toxic substances released into the

15  ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated,

16  and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability

17  Defendants, and each of them.

18      65.     Plaintiff at all times was unaware of the hazardous condition or the risk of personal

19  injury created by the aforesaid presence and use of asbestos products and materials and other toxic

20  substances on said premises.

21      66.     The hazardous condition or risk of personal injury created by the aforesaid presence

22  and use of asbestos products and materials and other toxic substances on said premises was not a

23  known condition that plaintiff's employer was hired to correct or repair.

24      67.     At all times mentioned herein, said Premises Owner/Contractor Liability

25  Defendants, and each of them, remained in control of the premises where plaintiff was performing

26  his work.

27      68.     At all times mentioned herein, the Premises Owner/Contractor Liability Defendants

28  owed to plaintiff and others similarly situated a duty to exercise ordinary care in the management of

---

**COMPLAINT FOR PERSONAL INJURIES**                                                    PAGE 28

1   such premises in order to avoid exposing workers such as plaintiff to an unreasonable risk of harm

2   and to avoid causing injury to said person.

3         69.     At all times mentioned herein, said Premises Owner/Contractor Liability

4   Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have

5   known, that the premises that were in their control would be used without knowledge of, or

6   inspection for, defects or dangerous conditions and that the persons present and using said premises

7   would not be aware of the aforesaid hazardous conditions to which they were exposed on the

8   premises.

9         70.     At all times mentioned herein, said Premises Owner/Contractor Liability

10   Defendants, and each of them, negligently failed to maintain, manage, inspect, survey, or control

11   said premises or to abate or correct, or to warn plaintiff of, the existence of the aforesaid dangerous

12   conditions and hazards on said premises.

13         71.     At all times herein mentioned, said Premises Owner/Contractor Liability

14   Defendants, and each of them, negligently provided unsafe equipment, for the performance of the

15   work that caused or contributed to plaintiff's injuries.

16         72.     Prior to and at the times and places aforesaid, said Premises Owner/Contractor

17   Liability Defendants, and each of them, respectively, caused certain asbestos-containing materials,

18   other building materials, products and toxic substances to be constructed, installed, maintained,

19   used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their own

20   workers and/or by employing various contractors, and caused the release of dangerous quantities of

21   toxic asbestos fibers and other toxic substances into the ambient air and thereby injured plaintiff.

22         73.     At all times mentioned herein, said Premises Owner/Contractor Liability

23   Defendants, and each of them, should have recognized that the work of said contractors would

24   create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or

25   would harm plaintiff and others unless special precautions were taken. The said Premises

26   Owner/Contractor Liability Defendants, and each of them, knew or should have known that the

27   work required special procedures and instruction so as to be accomplished in a safe manner and

28   avoid injury to plaintiff and others. The Premises Owner/Contractor Liability Defendants were

aware or should have been aware that such special procedures and instructions were not taken nor provided.

74.    In part, plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such premises owners and/or contractors' failure to take the necessary precautions.

75.    The work, actions and/or inactions of contractors on premises controlled by the Premises Owner/Contractor Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

76.    The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said negligent conduct includes but is not limited to:

a.    Failure to advise and warn of asbestos and other toxic dusts;

b.    Failure to suppress the asbestos-containing or toxic dusts;

c.    Failure to remove the asbestos-containing and toxic dusts through use of ventilation or other approved appropriate means;

d.    Failure to provide adequate breathing protection, i.e., approved respirators or masks;

e.    Failure to inspect and/or test the air;

f.    Failure to provide proper medical monitoring, medical check-ups, and reviews, and provide reports and findings on any such check-ups or monitoring that did occur.

77.    The Premises Owner/Contractor Defendants' duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code §6400, et seq., or Health and Safety Code §40200, et seq., and regulations promulgated thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves or others.

78.     Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, local and regional governments and agencies, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4150, 4106, 4107, and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code §40200, et seq., which empowers the Bay Area Air Quality Management District and South Coast Air Quality Management District to promulgate regulations including but not limited to BAAQMD, Regulation 11, Rules 2 and 14, Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq., and related SCAQMD regulations, The National Emission Standards for Hazardous Air Pollutants, which required said Premises Owner/Contractor Liability Defendants to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions, or contractors employed by the Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions. Defendants' violations of said codes include but are not limited to:

a.     Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

b.     Failing to segregate work involving the release of asbestos or other toxic dusts;

c.     Failing to suppress dust using prescribed ventilation techniques;

d.     Failing to suppress dust using prescribed "wet down" techniques;

e.     Failing to warn or educate plaintiff or others regarding asbestos or other toxic substances on the premises;

1        f.      Failing to provide approved respiratory protection devices;

2        g.     Failing to ensure "approved" respiratory protection devices were used

3                 properly;

4        h.     Failing to provide for an on-going health screening program for those

5                 exposed to asbestos on the premises which included disclosure and/or

6                 discussion of ongoing health consequences of asbestos exposure with

7                 plaintiff;

8        i.      Failing to provide adequate housekeeping and clean-up of the work place;

9        j.      Failing to properly warn of the hazards associated with asbestos as required

10               by these statutes;

11       k.     Failing to properly report renovation and disturbance of asbestos-containing

12              materials, including but not limited to B.A.A.Q.M.D. Regulation 11-2-401

13              and S.C.A.Q.M.D regulations;

14       l.      Failing to have an asbestos removal supervisor as required by regulation;

15       m.   Failing to get approval for renovation as required by statutes;

16       n.    Failing to maintain records as required by statute; and

17       o.    Failing to provide plaintiff with alternative, safe, asbestos-free work areas

18              and/or failure to remove plaintiff from an asbestos-laden environment where

19              ongoing exposures to asbestos increased the risk of plaintiff contracting an

20              asbestos-related disease.

21       p.    Failing to apprise plaintiff of the results of any such medical monitoring of

22              physical check-ups that occurred and the risks of contracting asbestos-related

23              diseases.

24    79.    Plaintiff at all times was unaware of the hazardous condition or the risk of personal

25 injury created by defendants' violation of said regulations, ordinances or statutes.

26    80.    At all times mentioned herein, plaintiff was a member of the class of persons whose

27 safety was intended to be protected by the regulations, statutes or ordinances described in the

28 foregoing paragraphs.

81.     In such circumstances where plaintiff was the employee or "statutory employee" of said Premises Owner/Contractor Liability Defendants as defined by the California Labor Code and related California case law interpretations, such Premises Owner/Contractor Liability Defendants owed a duty of care to prevent injury, harm, damage, or loss to plaintiff. Instead, well outside the normal risk of plaintiff's employment, said Premises Owner/Contractor Liability Defendants caused plaintiff to be exposed to asbestos-containing products and other airborne toxic asbestos, fraudulently concealed and failed to disclose the unsafe premises and conditions due to asbestos and toxic products contamination, as well as the known and recognized injurious health consequences of repeated and reoccurring exposures by plaintiff to asbestos-containing products, materials, and other toxic asbestos substances, and plaintiff's exposure to asbestos-containing products and the concurrent injury to his person was aggravated by the employer's fraudulent concealment of the existence of hazardous asbestos-containing products exposure and concurrent injury and its connection with plaintiff's employment and job duties, thereby subjecting said Premises Owner/Contractor Liability Defendants to liability in this action pursuant to the California Labor Code sections 3600, et seq. Moreover, during plaintiff's time of employment with said Premises Owner/Contractor Liability in such circumstances where plaintiff was the employee or "statutory employee" of said Premises Owner/Contractor Liability Defendants, Plaintiff's employers illegally failed to obtain and to maintain proper and sufficient workers' compensation insurance either in the form of self-insurance or through an insurance policy through a proper insurance provider, and which covered plaintiff's employment-related injuries, damages, losses, or harms, and which was not subject to any exclusionary language, including but not limited to exclusions related to intentional actions or toxic substances, thereby permitting Plaintiff to seek recovery for his employment-related injuries pursuant to California Labor Code sections 3600, 3700, et seq., that permit recovery in Superior Court under the circumstances alleged herein. Moreover, in such circumstances where plaintiff was the employee or "statutory employee" of said Premises Owner/Contractor Liability Defendants as defined by the California Labor Code and related common law interpretations, whether Plaintiff was exposed to asbestos, or whether such exposures were a substantial factor in causing the asbestos-related injury alleged in the Complaint would be

1   the subject of discovery in this action and would require testimony from a qualified expert witness.

2   Accordingly, any allegations of exposure to asbestos  during any employment with Premises

3   Owner/Contractor Liability Defendants are unverified allegations based solely on information and

4   belief, and therefore are not admissions of asbestos exposure during such employment, and are not

5   admissions that such exposures during employment were a proximate cause of Plaintiff's injury and

6   a substantial factor in causing said injury as alleged in the Complaint.  Furthermore, Premises

7   Owner/Contractor Liability Defendants manufactured and/or supplied asbestos-containing products

8   that Plaintiff, and/or others in his vicinity, worked with outside of Plaintiff's employment, if any,

9   with the Premises Owner/Contractor Liability Defendants, and which was a source of Plaintiff's

10   exposure to asbestos during his lifetime, subjecting these Defendants to liability under the dual

11   capacity doctrine.

12         82.     At all times mentioned herein, said Premises Owner/Contractor Liability

13   Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have

14   known, that the premises that were in their control would be used without knowledge of, or

15   inspection for, defects or dangerous conditions, that the persons present and using said premises

16   would not be aware of the aforesaid hazardous conditions to which they were exposed on the

17   premises, and that such persons were unaware of the aforesaid violations of codes, regulations and

18   statutes.

19         83.     Said Premises Owner/Contractor Liability Defendants knew of the harmful

20   exposures to asbestos sustained by plaintiff at, by and/or through the actions and/or inactions of

21   their own employees or others under the direct and immediate instruction, control and/or

22   supervision of said Premises Owner/Contractor Liability and said Premises Owner/Contractor

23   Liability Defendants concealed and/or failed to disclose to plaintiff the harmful effects and bodily

24   injuries suffered by plaintiff as a result of such exposures to asbestos.

25         84.     As a legal consequence of the foregoing, plaintiff developed an asbestos-related

26   illness, which has caused great injury and disability as previously set forth, and plaintiff has

27   suffered damages as herein alleged.

28      ///

1    WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and

2    each of them, as hereinafter set forth.

3                              **SIXTH CAUSE OF ACTION**

4                        **(Negligence – Clutch & Brake Components)**

5        **AS AND FOR A FURTHER SIXTH SEPARATE AND DISTINCT CAUSE OF**

6    **ACTION FOR PRODUCTS LIABILITY (NEGLIGENCE) FOR CLUTCH COMPONENTS**

7    **AND BRAKE ASSEMBLIES, MECHANISMS AND LININGS, PLAINTIFFS COMPLAIN**

8    **OF DEFENDANTS LISTED ON EXHIBIT "D" ATTACHED HERETO, and DOES 451-500,**

9    **AND ALLEGE AS FOLLOWS:**

10       84.     Plaintiffs, by this reference, incorporate the allegations contained in the First through

11   Fifth Causes of Action as though fully set forth herein.

12       85.     Defendants listed on Exhibit "D" attached hereto and DOES 451-500, manufactured

13   or supplied defective asbestos-containing products, materials, and parts including, but not limited

14   to: drilling rigs, trucks, construction equipment, heavy equipment, and/or other vehicles.

15   Additionally and/or alternatively, said defendants manufactured and/or supplied defective asbestos-

16   containing products, materials, and parts including, but not limited to: clutch components; brake

17   components; brake assemblies, linings, and mechanisms; clutch assemblies, linings, and

18   mechanisms; gaskets; mufflers; belts, and other related products which were incorporated into

19   various makes and models of farm equipment, equipment of varied sorts, and/or other vehicles

20   manufactured, sold or supplied by said defendants as original and/or aftermarket equipment.  Said

21   asbestos-containing products, including farm equipment, as well as clutch components and brake

22   assemblies or mechanisms or linings and gaskets and mufflers and other products installed on such

23   equipment were negligently manufactured, sold, or supplied in that:

24              a.     The design of said asbestos-containing vehicles incorporated and specified

25                     the use of asbestos-containing clutch facings/plates, brake linings, gaskets,

26                     and related parts and equipment;

27              b.     Asbestos clutch components and brake linings and mechanisms and gaskets

28                     wear and/or deteriorate during regular and ordinary use, thus creating friable

---

**COMPLAINT FOR PERSONAL INJURIES**                                                    PAGE 35

asbestos dust, which accumulates in and around the engine compartment, clutch components, brake assemblies and/or brake mechanisms, wheel well, wheel cylinder, and other areas on the vehicle body and vehicle component parts;

c.    The design of said vehicles and equipment clutch components and brake assemblies, require as a part of their normal operation, use, inspection and maintenance that the asbestos clutch components and brake linings be removed and replaced, and gaskets be similarly removed and replaced;

d.    Said defendants specified and required the use of asbestos-containing clutch components and brake linings and gaskets and related asbestos-containing products throughout the time period 1940-1985;

e.    Particularly during the inspection, removal and replacement of asbestos-containing clutch components and brake linings, asbestos-containing dust was necessarily and inherently generated because of the design of the clutch components and brake assemblies and/or mechanisms.  The same results occurred when installing or removing asbestos-containing gaskets;

f.    Defendants knew or should have known that the asbestos-containing dust would be generated during the regular use, inspection and maintenance of the vehicles, clutch components and brake assemblies, mechanisms and linings, and gaskets and that such dust created an increased risk of asbestos disease for all users, consumers, or others who breathed said asbestos-containing dust;

g.    The defendants, and each of them, failed to warn and/or properly instruct users, consumers, or others of the asbestos-containing dust hazard which existed at the time of regular operation, inspection, maintenance or replacement of vehicles/equipment and the associated asbestos clutch components and brake linings and gaskets.  Such failure includes, but is not limited to:

i.   Failure to place prominent and/or adequate warnings or instructions for safe use and handling in and on the clutch components and brake assemblies, mechanisms, linings, brake pads, wheel drums, brake mechanism, gaskets, mufflers, or other parts of the vehicles/equipment or vehicle/equipment component parts;

ii.   Failure to place adequate warnings or instructions in the owners' manuals accompanying said automobiles, trucks, and equipment;

iii.   Failure to place adequate warnings or instructions on various repair manuals and instructions published by defendants and others; and

iv.   Failure to provide adequate information regarding the asbestos hazards associated with the regular inspection, use and maintenance of the clutch components and brake mechanisms, assemblies and/or linings, and gaskets.

v.   Failure to place prominent and/or adequate warnings or instructions for safe use and handling in and on the packaging of clutch components and brake assemblies, mechanisms, linings, brake pads, wheel drums, brake mechanism, gaskets, mufflers, or other parts or vehicle/equipment component parts;

h.   Said asbestos-containing automobile, trucks, and equipment released harmful asbestos into the ambient air which plaintiff breathed during the normal and intended use of said vehicles/equipment, including, but not limited to, the regular operation, inspection, maintenance, and repair of such vehicles/equipment, and normal and intended use of said asbestos-containing clutch components and brake assemblies, mechanisms, linings, brake pads, wheel drums, brake mechanism, gaskets, and related products.  Said asbestos-containing vehicles, equipment and component parts contained no warning or caution as to their asbestos content.  The asbestos-containing vehicles, equipment and component parts were not substantively altered in

COMPLAINT FOR PERSONAL INJURIES                                           PAGE 37

any way, in either design or function, at the times during which harmful
asbestos exposures occurred as a result of working with and around said
asbestos-containing products. The risk of harm as a result of working with
and/or around said asbestos-containing products outweighed any perceived
benefit of such products and such products should have and could have been
designed and manufactured without excessive risk of harm resulting from the
incorporation, use, and specification of asbestos into said asbestos-containing
products, including vehicles, equipment and components parts.

86.    The asbestos-containing products, including automobiles, trucks, and equipment,
gaskets, clutch components and brake assemblies, mechanisms and/or linings, specified,
manufactured, sold or supplied by defendants, failed to perform as safely as the ordinary consumer
would expect, even though they performed as designed.

87.    Defendants' specification, use and design of asbestos-containing automobiles,
equipment, gaskets, mufflers, clutch components and brake linings, and other essential equipment
incorporated on such vehicles, both as original equipment and as replacement parts, created
unreasonable inherent risks which outweighed the benefits of said use and/or design.

88.    The dangers inherent in asbestos-containing automobiles, trucks, equipment, gaskets,
clutch components and brake linings were unknown and unforeseeable to plaintiff.

89.    The asbestos-containing automobiles, trucks, equipment, gaskets, clutch
components and brake assemblies, mechanisms and/or linings specified, sold or supplied by
defendants inspected, maintained, and repaired by plaintiff were not substantially nor improperly
altered from that of their original manufacture, nor used in an unintended or unforeseeable fashion.

90.    Plaintiff's exposure to asbestos-containing dust, which caused his injury, was from
the inspection, use and maintenance of defendants' automobiles, trucks, equipment, gaskets, clutch
components and brake mechanisms, assemblies and/or linings, and related products and equipment.
Said work produced the release of asbestos dust, which plaintiff inhaled, thus increasing his risk for
all asbestos-related disease.

91.    Defendants also should have provided a post-sale warning regarding the health risks

the cost of feasible alternative and safer designs, including providing adequate warning of such potential harm, including asbestos-related disease.

97.     Defendants' conduct and defective products as described in this cause of action were a direct cause of plaintiff's injuries, and the injuries and damages thereby sustained by plaintiff.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

### EIGHTH CAUSE OF ACTION

#### (Loss of Consortium)

**AS AND FOR A FURTHER, EIGHTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF'S SPOUSE COMPLAINS OF DEFENDANTS, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:**

98.     Plaintiff Dennis Hale's spouse, Lora Hale, incorporates by reference each and every paragraph of the First through Seventh Causes of Action herein.

99.     Plaintiffs were married at all times relevant to this action were, and are now, husband and wife. Plaintiffs at all times have enjoyed the benefits of marriage in all aspects, including mental, physical, spiritual.

100.     Prior to plaintiff's injuries as alleged, plaintiff was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, plaintiff has been unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home, and plaintiff will be unable to perform such work, service and duties in the future.  As a proximate result thereof, plaintiff's spouse has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown to plaintiffs but which will be proved at the time of trial.

101.     Discovery of the cause of plaintiff's spouse's loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

102.     As a direct and proximate result of the acts of defendants, their "alternate entities,"

1  and each of them, and the severe injuries caused thereby to plaintiff as set forth in this complaint,

2  plaintiff's spouse has suffered, and for a long period of time will continue to suffer loss of

3  consortium, including but not by way of limitation, loss of services, marital relations, society,

4  comfort, companionship, love and affection of said spouse, and has suffered severe mental and

5  emotional distress and general nervousness as a result thereof.

6     WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as is

7  hereinafter set forth.

8                **DAMAGES**

9     Plaintiffs pray judgment against defendants and each of them as follows:

10    For special damages according to proof;

11    For general damages according to proof;

12    For medical expenses according to proof;

13    For loss of income according to proof;

14    For punitive damages according to proof;

15    For Plaintiffs' costs of suit herein; and,

16    For such other further relief as this Court and the law deems just and proper.

17

18  Dated: November 8, 2021          **KELLER, FISHBACK & JACKSON LLP**

19

20                        By:  _____

21                             Stephen M. Fishback
                             Attorneys for Plaintiffs

22

23

24

25

26

27

28

**EXHIBIT "A"**

Plaintiff, Dennis Hale, was diagnosed with an asbestos-caused disease, including but not limited to lung cancer and other lung disease.

Plaintiff, Dennis Hale, was exposed to asbestos of varied types and sources during his employment, which may have included, but is not limited to: adhesives/tape/mastic; automobiles; boilers; brakes; cloth; compressors; condensors; construction materials including joint compounds and drywall; desalination equipment; evaporators, economizers, fiber product; friction materials; gaskets; hoists, insulating cement; insulation/insulating materials; lifts; motors; oil purifying equipment; packing; pipecovering/block insulation; pumps; refrigeration equipment; sealants/coatings; steam generating equipment, valves; and other materials containing asbestos currently unknown or unspecified by plaintiffs. Plaintiff and others around him performed clean-up tasks using compressed air, push brooms, dry cloths and other tools after performing such tasks and other vehicle repair and maintenance. Such repair, maintenance and clean up caused plaintiff to be exposed to harmful respirable asbestos, which he breathed, and was a cause of his asbestos related disease.

Plaintiff was also exposed to asbestos dust that was carried into his work areas on the persons and clothing of his co-workers. While performing his regular job duties, his person and clothing were contaminated with such asbestos dust with resultant contamination of his home and vehicles and other areas of regular living. Plaintiffs allege and believe that plaintiff Dennis Hale's exposure occurred at job sites including, but not limited to, the following:

EMPLOYER: Various Plastering Contractors including but not limited to: Morris Plastering and Wolf Plastering
DATE: 1956-1960
JOB DUTIES: Plasterer
JOB SITE: Various Homes, Apartment Complexes and Businesses in Hamilton County, OH

EMPLOYER:  U.S. Navy
DATE: 09/29/1960 – 05/31/1983
JOB DUTIES: Machinist Mate
JOB SITE: Hunter's Point Naval Shipyard; Mare Island Naval Shipyard; San Diego Ship Repair; U.S.S. Yosemite (AD-19); USS Courtney (DE-1021); USS Epping Forest (MCS-7); USS Herbert J. Thomas (DD-833); USS Epperson (DD-719); USS Nitro (AE-23); USS Saratoga (CV-60); USS Davis (DD 937); USS Sierra (AD-180)

EMPLOYER: Charleston Naval Shipyard
DATE: 10/1983-04/1984
JOB DUTIES: Outside Machinist
JOB SITE:  Charleston Naval Shipyard

1

2  EMPLOYER: Coastal Dry Dock & Repair Corp.
   DATE:05/1984-08/1984
3  JOB DUTIES: Machinery Repair Supervisor
   JOB SITE:  Brooklyn Navy Yard
4
   EMPLOYER:  Various Trucking Companies
5  DATE: 1989-1997
   JOB DUTIES: Truck Driver
6  JOB SITE: Various locations throughout the United States
7
   Plaintiffs' investigation and discovery are continuing.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## EXHIBIT "B"

2

3    AIR & LIQUID SYSTEMS CORP., individually and as successor-in-interest to Buffalo Pumps, Inc.;

4    ALFA LAVAL INC., f/k/a The DeLaval Separator Company;
     ARMSTRONG INTERNATIONAL, INC.;

5    BW/IP, INC.;
     CBS CORPORATION, a Delaware Corporation, f/k/a Viacom Inc., Successor by Merger to CBS

6        Corporation, a Pennsylvania Corporation, f/k/a Westinghouse Electric Corporation;

7    CLARK-RELIANCE CORPORATION, as successor-in-interest to Jerguson Guage and Valve;
     CRANE CO., individually and as successor-in-interest to Stockham Valves & Fittings Company,

8        Chapman Valve Mfg. Co. and Alloy Steel Products Co.;;
     CROSBY VALVE, INC.;

9    CUMMINS INC.;
     ELLIOT COMPANY;

10   FLOWSERVE US, Inc., as successor-in-interest to Durametallic Corporation;

11   FLOWSERVE US, INC., as successor-in-interest to Edward Vogt Valve Co., Vogt Valve
         Company, Edward Valves, Inc., Nordstrom Audco, Inc., Nordstrom Valves, Inc., Rockwell

12       Manufacturing Co.;

13   FMC CORPORATION, individually and as successor-in-interest to Peerless Pump, Turbo Pump
         Operation, and Chicago Pump;

14   FOSTER WHEELER LLC, f/k/a Foster Wheeler USA Corporation;
     GARDNER DENVER, INC., individually and as successor-in-interest to Joy Manufacturing

15       Co.;

16   GENERAL ELECTRIC COMPANY;
     IMO INDUSTRIES INC.;

17   ITT LLC, f/k/a ITT, INC., f/k/a ITT CORPORATION, individually and as successor-in-interest
         to Bell & Gossett, Kennedy Valve Manufacturing Co., McDonnell & Miller, Fabri-Valve,

18       Hoffman Specialty Manufacturing Co.;

19   JOHN CRANE, INC., individually and as successor-in-interest to CRANE PACKING
         COMPANY;

20   KAISER GYPSUM COMPANY, INC.;
     MUELLER STEAM SPECIALTY;

21   NAVISTAR, INC.;

22   PACCAR, INC.;
     PARKER HANNIFIN CORPORATION, individually and as successor-in interest to Sacomo-

23       Sierra, Parker Seal Company; and Rockwell Mechanical Packing;

24   SERVICE ENGINEERING CO.;
     STERLING FLUID SYSTEMS (USA) LLC, dba and individually and as successor-in-

25       interest to PEERLESS PUMP COMPANY and INDIAN HEAD, INC.;
     THE GOODYEAR TIRE & RUBBER COMPANY;

26   THE WILLIAM POWELL COMPANY;

27   TRIPLE A MACHINE SHOP, INC.;
     VELAN VALVE CORP.;

28   VIKING PUMP, INC.;

VOLVO TRUCKS NORTH AMERICA, INC.;
WARREN PUMPS LLC, individually and as successor-in-interest to WARREN PUMPS, INC.;
WEIR VALVES & CONTROLS USA, INC. f/k/a ATWOOD & MORRILL;
WELCO MANUFACTURING COMPANY;
DOES 1-300;

1

**EXHIBIT "C"**

2

3

SERVICE ENGINEERING CO.;
TRIPLE A MACHINE SHOP, INC.;
DOES 301-450

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## EXHIBIT "D"

2 CUMMINS INC.;
NAVISTAR, INC.;
3 PACCAR, INC.;
VOLVO TRUCKS NORTH AMERICA, INC.;
4 DOES 451-500.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28